UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 7:18-CV-23-KKC

ELLIS KEYES,                                                              PLAINTIFF,

v.                              **RECOMMENDED DISPOSITION**

EDISON BANKS,                                                          DEFENDANT.

* * * * * * * * *

There are three pending matters before the Court. First, Edison Banks filed a renewed motion to dismiss and bar prospective filings by Ellis Keyes. [R. 55]. Second, after this Court held a status hearing to clarify the issues and directed the parties to file dispositive motions within thirty days, Keyes and Banks filed cross-motions for summary judgment. [R. 62-63]. Third, in Keyes' cross-motion for summary judgment, he also asks the Court to set a trial date. [R. 63]. With the issues being fully briefed and ripe for review, this Court RECOMMENDS that: (1) Banks' motion to dismiss and bar prospective filings be denied; (2) Banks' motion for summary judgment be granted; and (3) Keyes' motion for summary judgment and request to set a trial date be denied.

## I.    FACTS AND PROCEDURAL HISTORY

The facts of this case are not in dispute. The Sixth Circuit summarized the pertinent facts of this case as follows:

> Ellis Keyes, a pro se Kentucky litigant, was an aspiring candidate for the Office of the Commonwealth's Attorney for Letcher County, Kentucky. The incumbent Commonwealth's Attorney filed a motion in Letcher County Circuit Court to remove Keyes's name from the ballot, arguing that Keyes lacked the necessary qualifications because he was not a licensed attorney. In February 2018, Keyes filed a motion in the United States District Court for the Eastern District of Kentucky

asking that court to stay or dismiss his then-pending state-court proceeding, as well for "such other further relief deemed just and proper." Invoking 28 U.S.C. § 2283, the district court dismissed Keyes's action for lack of jurisdiction to provide the requested relief. On appeal, this court remanded the case to the district court for further proceedings. *Keyes v. Banks*, NO. 18-5213 (6th Cir. Sept. 26, 2018).

[R. 48 at p. 1]. As its opinion indicates, the Sixth Circuit first considered the District Court's dismissal of Keyes' claims for lack of subject-matter jurisdiction. [R. 7]. On September 26, 2018, the Sixth Circuit found that the District Court has subject-matter jurisdiction to consider Keyes' claims, which it construed broadly as a federal question under the Fourteenth Amendment. [R. 14].

Before filing his Answer, Banks filed a motion to dismiss and bar prospective filings by Keyes. [R. 27]. Following the District Court's denial of Banks' motion to dismiss, he now renews his request. [R. 29, 55]. After carefully reviewing the arguments raised by Banks, the undersigned held a status hearing to clarify the basis of Keyes Fourteenth Amendment claim. [R. 58-59]. At the status hearing, Keyes clarified that he is only asserting substantive and procedural due process violations against Banks for having his name taken off the ballot. [R. 60]. The parties were then directed to file any dispositive motion within thirty days. [*Id.*] Both parties filed cross-motions for summary judgment and stand ripe for consideration. [R. 62-63]. In his cross-motion for summary judgment, Keyes also filed his fourth motion to set a jury trial.[1] [R. 63].

## II.    STANDARD OF REVIEW

"A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." FED.R.CIV.P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Such a

---

1 *See* [R. 11, 15, 53, 63].

motion then "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id*. at 324 (internal quotation marks omitted). This is so because "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Id.* at 323–24. To avoid summary judgment, the non-movant must come forward with evidence on which a jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The following factors bear consideration by a court when entertaining a motion for summary judgment:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

6. As on federal directed verdict motions, the "scintilla rule" applies, *i.e.,* the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

**3** of **15**

8.  The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9.  The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 324. When reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). "[T]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland v. Mich. Dept. of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003) (citing *Anderson*, 477 U.S. at 251). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S.253, 288 (1968)).

In such a case, summary judgment is warranted. *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010); *Celotex,* 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

### III.    ANALYSIS

**Renewed Motion to Dismiss and Bar Prospective Filings:**

In his renewed motion, Banks argues that Keyes's claims should be dismissed because: (1) Keyes is barred from re-litigating factual and legal issues already decided in state court; and (2) Keyes is denied under the doctrine of *Rooker-Feldman* by requesting a federal court, other than the United States Supreme Court, to directly review the state court decision. [R. 55]. Banks also asks this Court to bar Keyes from prospective filings concerning this matter. In response at the status hearing, Keyes verified that he is asserting a federal cause of action that has not yet been adjudicated. [R. 60].

#### 1. *Res Judicata* and Collateral Estoppel

First, Banks argues that Keyes' claims are barred under theories of *res judicata* and collateral estoppel. [R. 55]. "Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). In regard to collateral estoppel, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Edu.*, 465 U.S. 75, 81 (1984). However, a party may choose to reserve its federal claims for federal court, while pursing state claims in state court. *England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411 (1964). This will allow a plaintiff to pursue a federal action on only federal law claims without *res judicata* barring those claims, even though they could have

been heard in state court. *Id.*

Here, Banks argues conclusively that Keyes' federal claim should be barred because he is attempting to relitigate claims that have already been decided in state court. [R. 55 at p. 3]. This argument is unpersuasive because this action involves an independent assertion by Keyes, alleging that he was denied procedural and substantive due process guaranteed by the Fourteenth Amendment to the United States Constitution when his name was stricken from the ballot. [R. 1]. The facts show that Banks filed a petition to remove Keyes from the ballot alleging he did not meet the requirements, which led the Letcher Circuit Court to subsequently grant his request. [*Id.* at p. 1-2]. In response to striking his name from the ballot, Keyes filed this instant action and then also appealed the state trial court's ruling. [*Id.* at 2]. Although Keyes could have brought his claims of substantive and procedural due process to state court, his failure to assert this claim on appeal does not preclude him from asserting these claims in federal court now. *See e.g., Louisiana State Bd. of Medical Examiners*, 375 U.S. 411. Thus, Banks has not presented any evidence to show that the same claim or issue was litigated in state court. Therefore, Keyes' claims are not barred by *res judicata* or collateral estoppel.

## 2. The *Rooker-Feldman* Doctrine

Second, Banks argues that this Court does not have the authority to review Keyes' claim because federal courts, other than the United States Supreme Court, cannot sit in direct review of a state court's decision unless Congress grants this power. [R. 55 at p. 4-5]. The *Rooker-Feldman* doctrine creates a narrow exception that says a party aggrieved by a state-court decision cannot appeal that decision to a federal district court but must instead petition for a writ of certiorari from the United States Supreme Court. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923); *see also*

**6** of **15**

*Marshall v. Bowles*, 92 Fed.Appx. 283 (6th Cir. 2004).

In *Marshall*, the plaintiff pursued an action against a state domestic relations judge, asserting that the judge violated her due process rights through various orders and rulings during the proceedings. *Marshall*, 92 Fed.Appx. at 284. The Sixth Circuit held that "[a] fair reading of the complaint reveals that [the plaintiff's] federal case is an impermissible appeal of state court judgments as it raises specific grievances regarding decisions of" the state court. *Id.* For this reason, the Sixth Circuit held that the district court lacked subject-matter jurisdiction under the *Rooker-Feldman* doctrine. *Id.*

Here, unlike *Marshall*, the facts do not support Banks' conclusion that this is essentially an appeal of the Letcher Circuit Court. Instead, the facts show that after Keyes was denied the ability to be on the ballot, he filed this action in federal court, asserting violations of procedural and substantive due process stemming from this denial. Thus, Keyes' request is not asking this Court to reconsider the Letcher Circuit Court's denial based on the Kentucky Constitution; instead, it is asking this Court whether this denial violated his Fourteenth Amendment rights under the United States Constitution. Therefore, since Keyes is asserting an independent claim under the Fourteenth Amendment, Keyes' federal claim is not barred under the *Rooker-Feldman* doctrine.

### 3. Banks' Request to Bar Prospective Filings By Keyes Against Him

Third, Banks also requests that Keyes be barred from prospective filings concerning this matter. [R. 55 at p. 4-5]. He states that Keyes, as a pro se plaintiff, "can only be seen as repetitious and frivolous" because Keyes "has unsuccessfully attempted to litigate and re-litigate the matter in each and every court made available to him." [*Id.*] In essence, it appears that Banks is asking this Court to find Keyes to be a vexatious litigator.

According to the Sixth Circuit, when it is clear that a plaintiff is a vexatious litigant who has filed multiple complaints concerning the same incident, the district court can enter an order requiring leave before the plaintiff files further complaints. *See Filipas v. Lemons*, 835 F.2d 1145, 1146 (6th Cir. 1987); *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998). The district court can also restrain prospective filings when there is "a recognized pattern of repetitive, frivolous, or vexatious cases within that category." *Feathers*, 141 F.3d at 269 (citing *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1524 (9th Cir. 1983) ("[t]he general pattern of litigation in a particular case may be vexatious enough to warrant an injunction in anticipation of future attempts to relitigate old claims.")).

Here, Banks does not present sufficient evidence to warrant imposing such relief. First, as this Court found in parts 1 and 2 above, while Keyes' claim stems from his denial to be on the ballot to run for Commonwealth Attorney, this case involves the constitutionality of the state court's decision pursuant to the United States Constitution. Banks' mere assertion that Keyes has been unsuccessful in all of his attempts to litigate and re-litigate this issue fails to explain how principles such as *res judicata* and collateral estoppel would not serve as more appropriate avenues should Keyes seek to litigate this matter further. *See Wood*, 705 F.2d at 1525 (if injunctions against plaintiffs are used "too freely or couched in overly broad terms, injunctions against future litigation may block free access to the courts. Such access not only ensures protections of privately created commercial interests, it also serves as the final safeguard for vitally important constitutional rights."). Unlike *Feathers*, there is no concern of multiple parties filing multiple meritless claims. *Feathers*, 141 F.3d 269. Instead, the facts show that Keyes has opposed Banks' petition to have him removed from the ballot by appealing the state court's decision and filing a federal cause of

action in federal court. Therefore, the circumstances do not warrant barring Keyes prospective filings.

In sum, Banks presented no evidence to warrant dismissing this action for being litigated below or for being an appeal of the state court's decision. Nor has Banks provided a sufficient legal or factual basis for barring Keyes from filing any prospective claims against him concerning this action. Therefore, it is recommended that Banks' motion to dismiss be denied.

**<u>Cross-Motions for Summary Judgment</u>:**

Keyes's current claim is brought under 42 U.S.C. § 1983, raising a federal question under the Fourteenth Amendment, alleging he was deprived of procedural and substantive due process when his name was removed from the ballot. [R. 1, 14]. There is no dispute of facts between the parties. Thus, the only issue before this Court is whether either Keyes or Banks are entitled to judgment as a matter of law based on the undisputed facts.

The Fourteenth Amendment provides that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV, § 1. As the Sixth Circuit has explained, "substantive due process prohibits the government's abuse of power or its use for the purpose of oppression, and procedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards." *Howard v. Grinage*, 82 F.3d 1343, 1350 (6th Cir. 1996).

Title 42, United States Code, Section 1983 does not create any substantive rights, but it instead provides a vehicle to seek redress for violations of constitutional rights, like the Fourteenth Amendment. *See Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 924 (1982). Specifically, Section

1983 authorizes "any citizen of the United States or other person within the jurisdiction thereof [to pursue] an action at law [or] suit in equity" against every person who under color of state law "causes. . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]"

Construing his claims broadly, Keyes claims that Banks, acting as a state official under color of Kentucky law, deprived him of the Democratic nomination by having his name removed from the ballot for the office of the Commonwealth Attorney, in violation of the substantive and procedural due process components of the Fourteenth Amendment to the United States Constitution. [R. 63]. In response, Banks argues that Keyes does not meet the requirements set forth in the Kentucky Constitution for the position and he does not have a liberty or property interest to meet the requirements of the Fourteenth Amendment. [R. 62]; Ky. Const. § 100 ("No person shall be eligible to the office of the Commonwealth's Attorney unless he shall have been a licensed practicing lawyer four years."). Keyes does not dispute that he is not an attorney. *See* [R. 63 at p. 1]. Instead, he argues that the Fourteenth Amendment allows anyone to run for office without arbitrary limitations being imposed. [R. 63 at p. 2 ("Defendant by assuming that license excludes Plaintiff as qualified person fit by his power of attorney certificate is untrue, pure fiction and deceit.")].

### 1. Procedural Due Process

"The requirements of procedural due process apply only to the deprivations of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). Procedural due process claims require a two-step analysis. *Mitchell v. Fankhauser*, 375 F.3d 477, 480 (6th Cir. 2004). First, courts must

determine "whether the alleged deprivation is within the ambit of the Fourteenth Amendment's protection of liberty and property." *Shoemaker v. City of Howell*, 795 F.3d 553, 558-59 (6th Cir. 2015). Second, if the plaintiff does have a protected interest, the Court must determine how much process was due and whether the plaintiff was "afforded adequate process prior to and following the deprivation." *Id.* at 559; *Michell,* 375 F.3d at 480.

Banks argues that Keyes cannot meet the first step of the analysis because Keyes did not have a liberty or property interest in running for an election. [R. 62 at p. 1]. Keyes argues that he has a liberty interest to have his name on the ballot because "liberty consist[s] [of] the power [to do] whatever does not injure another" and elections do not cause harm to people. [R. 63 at p. 1].

A government position, by itself, does not constitute a protected property interest. *Bailey v. Floyd Cnty. Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir. 1997). "Government employment amounts to a protected property interest if the employee is 'entitled' to continued employment." *Id.* (citing *Roth*, 408 U.S. at 577). A government employee asserting a protected property interest in his position must "point to some statutory or contractual right conferred by the state which supports a legitimate claim to continued employment." *Id.* Keyes does not point to continuing employment, or any statutory or contractual authority to show that he had a legitimate claim of entitlement to keep his name on the ballot after it was determined that he did not meet the requirements of the Kentucky Constitution. Thus, there was no deprivation of his property interest.

Keyes also argues that since Kentucky is a right-to-work state, he is entitled to have his name on the ballot. [R. 63 at p. 5]. However, the Supreme Court has "determined that an unlawful denial by state action of a right to state political office is not a denial of a right of property or of liberty secured by the due process clause." *Snowden v. Hughes*, 321 U.S. 1, 7 (1944) (citing *Taylor*

*v. Beckham*, 178 U.S. 548 (1900)). Like *Snowden*, Keyes' denial is one set by state law, and his deprivation from running comes from his "failure to obey state law." *Snowden*, 321 U.S. at 7. Accordingly, Keyes' claim concerning the Fourteenth Amendment "is so unfounded in substance that we are justified in saying that it does not really exist; that there is no fair color for claiming that his rights under the federal constitution have been violated." *Id.* at 13. Therefore, since Keyes cannot meet the first step by showing that he was deprived of a liberty or property interest, this Court does not need to determine whether he received sufficient process. Thus, Keyes has not established that Banks violated his procedural due process rights.

### 2. Substantive Due Process

The substantive component of the Due Process Clause protects fundamental rights created by the Unite States Constitution. Fundamental rights are those specifically guaranteed by the United States Constitution and those rights that are "implicit in the concept of ordered liberty." *Palko v. Connecticut*, 302 U.S. 319, 325 (1937). These rights generally include "the rights to marry, to have children, to direct the education and upbringing of one's children, to martial privacy, to use contraception, to bodily integrity, and to abortion." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (internal citations omitted).

Keyes argues that the Fourteenth Amendment does not permit placing restrictions on his right to run for office since he is not infringing on other people's liberties. [R. 63 at p. 1]. However, substantive due process rights have been specifically defined by the Supreme Court and it does not include the right to maintain employment, including the government placing restrictions on who may run for public office. *See Seal v. Morgan*, 229 F.3d 567, 574-75 (6th Cir. 2000). Moreover, the Supreme Court has already held that a person does not have a liberty or property interest in

running for public office. *Snowden*, 321 U.S. at 7. Therefore, he has not shown that his removal from the ballot violated his substantive due process rights under the Fourteenth Amendment. Thus, Keyes' substantive due process claim lacks merit as a matter of law.

In sum, Keyes has not shown that there is a genuine dispute to material facts or that he is entitled to judgment as a matter of law. Instead, it is recommended that Keyes' motion for summary judgment be denied for the reasons that Banks' motion for summary judgment should be granted. First, Keyes has not shown that the removal of his name violated his procedural due process rights because he could not show a property or liberty interest in running for office as the Commonwealth Attorney. Second, Keyes could not show that he was denied a fundamental right when his name was taken off of the ballot for not meeting the requirements set forth in Section 100 of the Kentucky Constitution. Therefore, it is recommended that Keyes' motion for summary judgment be denied and Banks' motion for summary judgment be granted.

**Motion to Set Trial:**

At the conclusion of Keyes' cross-motion for summary judgment, he also requests the Court to set a trial date in this matter. [R. 63 at p. 7-8]. However, having concluded that the undisputed facts show that Banks is entitled to judgment as a matter of law concerning Keyes substantive and procedural due process claims, Rule 56 permits the Court to enter judgment in favor of Banks. *See Celotex*, 477 U.S. at 323–24 ("[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."); *see also Matsushita*, 475 U.S. at 587 ("[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."). Thus, since this Court was waiting to schedule a trial date, if necessary, following the outcome of the dispositive motions,

there are no issues that need to be submitted to the jury. Therefore, it is recommended that Keyes'
request to set a trial date be denied.

## IV.    RECOMMENDATION

Therefore, having considered the record and being advised,

IT IS RECOMMENDED that:

1.  Banks' motion to dismiss [R. 55] be DENIED;

2.  Banks' motion for summary judgment [R. 62] be GRANTED; and

3.  Keyes' motion for summary judgment and motion to set a trial date [R. 63] be
    DENIED.

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing
this Recommended Disposition. Particularized objections to this Recommended Disposition must
be filed with the Clerk of the Court within fourteen days of the date of service or further appeal is
waived. FED. R. CIV. P. 72(b)(2); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). A
general objection that does not "specify the issues of contention" is not sufficient to satisfy the
requirement of written and specific objections. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).
Poorly drafted objections, general objections, or objections that require a judge's interpretation
should be afforded no effect and are not sufficient to preserve the right of appeal. *Howard v.
Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991). A party may respond to another party's
objections within fourteen days of being served with a copy of those objections. FED. R. CIV. P.
72(b)(2).

Signed April 22, 2020.

**14** of **15**



Signed By:

_Edward B. Atkins_  ЄBА

United States Magistrate Judge